In re Estate of Ida M. Simplot.

Genevieve S. Rooney, Appellant, v. Dan L. Lenehan, Executor, Appellee.

No. 40646.

September 29, 1931.

Opinion on Rehearing January 17, 1933.

J. J. Kintzinger and Havner, Flick, Huebner & Powers, for appellants.

Hurd, Lenehan, Smith & O'Connor, for appellee.

Evans, J.—The facts pertaining to the existence of a written contract between Mrs. Rooney and Miss Simplot are made to appear without dispute. These may be briefly stated:

Miss Ida Simplot was the unmarried sister of Mrs. Rooney, the mother of this plaintiff. John H. Simplot was the unmarried brother of the sisters. In 1903 John Simplot died testate, survived by these two sisters and a half sister. His will gave substantially all his property to his sister, Ida Simplot. The will was admitted to probate, and Ida Simplot was appointed as executor thereof. In the following year, Mrs. Rooney brought a statutory action to set aside the probate of the will on the ground of the mental incapacity of the testator to execute the same, and on the ground of fraud and undue influence on the part of Ida Simplot in inducing the same. This suit was pending in court for a period of two years, and until 1906. On a date in the latter year, a written stipulation between the parties was entered into and filed in the case. This was as follows:

> "In the District Court of the State of Iowa in and for Dubuque County.
> "Frances E. Rooney, Plaintiff, v. Ida M. Simplot, Defendant.

"Stipulation.

"It is hereby stipulated and agreed by and between the parties to the above-entitled action that the defendant is to pay to the plaintiff the sum of five hundred dollars in full settlement and payment of any and all claims she may have against the estate of John H. Simplot, deceased, and as soon as said five hundred dollars is paid, the plaintiff agrees to dismiss the above-entitled action now pending in said court, and to pay the costs therein incurred."

The oral agreement declared in the petition of plaintiff is identical with the foregoing written stipulation, except that the plaintiff avers further that "Ida M. Simplot agreed that she would by will leave all the property she died seized of, to Frances E. Rooney or her surviving children, if dead." It will be noted, therefore, that the difference between the written and the oral alleged contract is that the written stipulation provided a payment of $500 by Ida M. Simplot and the acceptance by Mrs. Rooney of $500 in "full settlement" of the case; whereas by the alleged oral contract the consideration of the settlement comprised an additional agreement that a will should be made in favor of Mrs. Rooney. It is the claim of the appellant that the alleged oral contract was contemporaneous with the writing. Her parol evidence in support of her claim was rejected on the ground that the alleged oral contract was inconsistent with the writing. Mrs. Rooney died in 1925. Miss Simplot died in 1928. Her will provided a legacy for the plaintiff herein of $4,000. Other legacies were given to other relatives, and still others to charitable institutions. The plaintiff claims to stand in the shoes of her mother, as heir, and as guardian of her incompetent brother. A single question of law is presented for our consideration. This is set forth by appellant in a single assignment of error, as follows:

"1. The court erred in sustaining defendant's objections to the introduction of evidence tending to establish the collateral oral agreement alleged in plaintiff's petition and relied on in this action; because it in no manner attempted to vary or alter or contradict the written stipulation, is not inconsistent therewith, the written stipulation *does not show* that it was intended to cover all the matters of negotiation included in the oral agreement; that the oral agreement was a separate, independent, and distinct collateral agreement, serving as an inducement for the execution of the written stipulation."

To quote from appellant's opening brief:

"The only question before this court for review is whether or not the offered evidence tends to vary or contradict the terms of the written instrument, which is claimed to be a full and complete contract."

We direct attention to this singleness of the issue, because the arguments have gone quite beyond the limits of such issue. Each argument seems to have been a stimulus to the other to enter upon broader fields of discussion than the record warrants. We shall aim to confine our discussion, as far as practicable, to the true issue in the case.

The parties agree in the broad statement of the rule which forbids the acceptance of parol evidence to contradict or vary the terms of a written contract. Their disagreement arises over the application of the rule and over the so-called "exceptions" to the rule. There are certain well recognized classes of cases to which the "parol evidence rule" is not applicable. These classes are often referred to as "exceptions." They are not strictly such. But, in deference to the usage of speech in that regard, we will refer to them as such. These so-called "exceptions" may be classified in the main as follows:

1. The rule has no application to suits in equity for reformation of written contracts. Parol evidence is always admissible in such a case.

2. Where the written contract is unilateral only, such as a promissory note, the nature of the consideration therefor may always be shown by parol evidence unless the note itself specifies such consideration.

3. An oral contract contemporaneous with a written one which is purely collateral is provable by parol evidence, provided that such oral contract is complete in itself, and does not contradict or vary any of the terms of the written contract. The alleged oral collateral contract may not become a part of the written contract. Each must stand upon its own terms and upon its own consideration. This class of cases involves no waiver or suspension of the parol evidence rule.

4. Parol evidence is admissible to prove that the delivery of a contract in a given case was conditional only, and that compliance with the condition failed. Such parol evidence must be directed

solely to the fact of *delivery* and to the conditions thereof. Such parol evidence does not operate to alter in any way the *terms* of the contract. If conditional delivery be proved, and that compliance with the condition failed, then the *entire contract* fails, regardless of its terms. The entire contract is deemed not to have become effective.

5. A single contract may be expressed partly in writing and partly in parol. However, a written contract is presumed to be complete and to comprise the entire transaction unless it otherwise appears from the written terms of the contract itself. Parol evidence is not otherwise admissible to prove that the written contract was fragmentary, and not complete. If such a function were permissible to parol evidence, then no written contract could be protected against contradiction by parol evidence.

The foregoing comprise the so-called "exceptions" to the parol evidence rule. They indicate the fields of debate. The arguments in this case have encamped in every one of them. Only one field, however, truly concerns us herein. The case must be classified either as falling under above No. 3 or above No. 5. If there were *two* collateral contracts, then under No. 3; if only *one* contract, then under No. 5. The preliminary question therefore presented is, Does the plaintiff sue upon *one* contract or upon *two?* Under her pleading, she purports to sue upon *one;* upon her sole assignment of error and her argument in support thereof, she purports to sue upon *two*. Her petition alleged:

"The said Ida M. Simplot and Frances E. Rooney entered into an oral agreement, by the terms of which the said Ida M. Simplot agreed with the said Frances E. Rooney that, if Frances E. Rooney would agree to accept the sum of $500 in full settlement of any and all claims she might have against the estate of John H. Simplot, and on receipt thereof would dismiss her action to set aside his will, that she, Ida M. Simplot, would by will leave all the property she died seized of to said Frances E. Rooney, if living, or to her surviving children, if dead. That thereupon the said Frances E. Rooney carried out her part of said agreement, and agreed to, and did, accept the sum of $500 in full settlement of any and all claims she might have against the estate of John H. Simplot, and dismissed her action to set aside his will."

We have already set forth the sole assignment of error.

Such assignment is based upon the averment "that the oral agreement was a separate collateral agreement serving as an inducement for the written stipulation." The position taken in the assignment of error is inconsistent with the pleading. Out of abundance of caution, however, we shall, for the purpose of our discussion, ignore the conflict and consider both phases of the record. The appellant does not in her argument deny the verity of the written contract. She contends that the oral contract upon which she sues, was purely *collateral*. She concedes also that even a collateral contract may not be proved by parol evidence which modifies or changes materially any provision of the written contract. In its final analysis the case turns at this point. Here, in the year 1906, was a pending will contest, which Mrs. Rooney was prosecuting and which Miss Simplot was defending, as the sole beneficiary of the will. By the written stipulation this contest was *"settled."* It was *"fully settled."* The considerations and obligations of each party were stipulated. Miss Simplot was to pay $500 to Mrs. Rooney, and Mrs. Rooney was to relinquish her claims and dismiss her contest. By this stipulation each party assumed a burden and received a benefit. The burden assumed by one was the benefit received by the other. Come now the heirs of Mrs. Rooney and seek to engraft upon the written stipulation further burden upon Miss Simplot and further benefit to Mrs. Rooney by means of an alleged collateral oral agreement. They aver that the burden assumed by Miss Simplot was greater than $500 and that the benefit to be received by Mrs. Rooney was likewise greater than $500. The alleged oral contract is not supported by any separate consideration. Unless the plaintiff may avail herself of the consideration involved in the written stipulation, then there was no consideration at all for the alleged oral agreement. Her contention is that the same consideration supported both contracts. If there was only one consideration, then necessarily there was only one contract. In such case the only question that can arise is, What were the terms of that contract? Such is the theory of plaintiff's pleading. On the other hand, if there were two contracts, each must be supported by its own consideration. To this proposition authorities will be cited later. In this connection the appellant lays stress upon the so-called "inducement" which one contract affords to the other. Her argument seems to assume that such inducement is the equivalent of a consideration, and that, therefore, the existence of one contract may become the consideration for

a collateral and contemporaneous one. As will be later shown, such is not the meaning of the term "inducement" in this connection. A person may buy a farm by written contract containing all the terms and conditions of the purchase and sale. In view of his purchase of the farm, he may at the same time be induced to buy personal property by a wholly separate and collateral oral agreement. The very fact that he is to come into possession of the farm may be an inducement to purchase needed personal property which is already upon the premises. Portable hog houses, brood houses for chickens, a feed mill, an elevator, are examples of purchases often made in connection with sales of farms. Parol evidence is always admissible to prove the terms of such collateral purchases. The price to be paid may thus be shown and the contracts may be enforced independently of the real estate contract. Such contracts are no part of the larger contract, though the larger contract may have had its inducing effect upon them. If, however, the purchaser asserts that the only consideration for the purchase of such personal property was the same consideration that bought the farm, then he subjects himself to the parol evidence rule. If there was no purchase price for the personalty, then there was no contract, collateral or otherwise. The purchaser may not say by parol evidence that the consideration which paid for the farm was to be received also as consideration for the purchase price of the personalty. And this is so notwithstanding that the purchase of the farm may have been an inducing cause for the purchase of the personalty already on the place. To illustrate further: A buys from B a city home by a written executory contract, which is complete in form. The home has in it suitable furniture, rugs and carpets that are fitted to the rooms. They negotiate for the purchase and sale of such rugs, and agree upon the price. The fact of the purchase of the home is an inducing cause to A to buy these particular furnishings. The fact that he has sold the home is an inducing cause to B to sell the furnishings to A as the most likely customer. But neither inducing cause operates as a consideration to B for the purchase of the furnishings. Such is the sense in which the word "inducement" is used in this class of cases. We shall make later reference to this subject.

II. In this division of the opinion we shall give brief consideration to the principal authorities cited and relied on by appellant. One of these is Armstrong v. Cavanagh, 183 Iowa 140. The plaintiff sued for rent due from the occupant of an apartment in a cer-

tain apartment house known as the Wright Building. The defendant presented a counterclaim for damages for breach of a contract for the use of a garage. The lease for the apartment was written, and all its terms and conditions presumably stated therein. The lease for the garage was oral. It was contemporaneous in part. The garage in question was situated upon the rear of the same city lots as were occupied by the apartment. The lease for the apartment did not purport to cover real estate, as such. Nor did it purport to cover any use of the garage. There was talk between the parties as to the cost of use of the garage. As a result of such talk, the following memorandum was entered by the defendant himself upon the written lease of the apartment: "Garage $5.00 per month without heat and $7.50 per month with heat." Whatever option was involved by this memorandum was exercised either at the same time or later. The defendant notified the plaintiff that he elected to take the use of the garage, with heat, at the stated price, and he did accordingly house his automobile in such garage. The plaintiff failed to maintain sufficient heat to protect the automobile against serious freezing. Over the objections of the plaintiff, the defendant was permitted to prove his counterclaim by parol evidence. Plaintiff's objection was that the evidence contradicted the written lease. We sustained the lower court in its ruling. The case is a typical one, and is a good illustration of that class of cases indicated in above No. 3. The collateral contract here sued upon was complete in its own terms. It had its own consideration. Its terms had no effect whatever upon the written lease of the apartment. The liability of the defendant for rent of the apartment was entirely distinct from his liability for rent of the garage. He might perform the one and breach the other. The appellant contends that there is no distinction in principle between the cited case and the case at bar. If in this case the collateral oral agreement had made no provision for the rent to be paid for the garage, and if the defendant had contended that the rent of the apartment specified in the written lease was to cover also the rent of the garage, then we would have a case precisely like the one at bar at that point. Except for the separate and independent consideration for the use of the garage, the defendant could not have maintained his counterclaim on the oral contract. He could not have engrafted the use of the garage upon the use of the apartment as for the consideration stated in the written lease.

Manifestly our holding in that case is adverse to the position of the plaintiff herein.

In Horner v. Maxwell, 171 Iowa 660, parol evidence was deemed admissible to prove an agreement by adopting parents to devise and bequeath all their estate to the child which they were about to adopt. The articles of adoption were drawn and executed between the actual parents and the adopting parents, but the latter neglected to record them, as required by statute. After the death of the adopting parents, without making provision for the child, suit was brought in her behalf. Defense objected to the admission of parol evidence on the ground that it conflicted with the written articles of adoption. We held that, by reason of the failure to record such articles, they never became effective for any purpose, and that, therefore, they furnished no protection whatever to the estate of the adopting parents. The parol evidence was admitted on the theory that there was no written agreement in existence.

Sutton v. Griebel, 118 Iowa 78, presented a question of conditional delivery. There is no quality of conditional delivery involved herein, and we need not, therefore, recite the record in that case.

Sutton v. Weber, 127 Iowa 361. This case also involved a conditional delivery. It also involved the effect of an alleged collateral agreement. As to the latter, it held that no collateral oral agreement could be considered "if the plea is to be construed as setting up a claim which is inconsistent with the clear meaning of the written contract." It was also held in that case that the written agreement involved therein was incomplete on its face, and that parol evidence was rendered admissible on the theory that the contract was partly in writing and partly oral. We said:

"The principle recognized in the several cases we have cited seems to be applicable here. In the first place, the writing is studiously indefinite. It bears the conspicuous heading, 'Duplicate Agent's Agreement,' and the word 'agent' is made prominent by superfluous repetition in the body of the writing; but the document is barren of any agreement or terms of agency. On the other hand, the writing may be searched in vain for the words 'buy' and 'sell,' or their equivalent, and 'seller' and 'purchaser' are equally conspicuous by their absence. There is no express request or order for the goods. While we may, perhaps, supply by implication words sufficient to give a part of the writing legal effect as an order or

purchase by the defendants, it is, as a whole, so evidently incomplete that proof of the circumstances under which it was made may well be admitted. If the obscure references to any agency with which the document is studded were not intended to be merely ornamental, we may well conclude that they indicate the existence of a collateral agreement by which, upon terms of some kind, Sutton had appointed the defendants agents for his alleged remedies,—at least, that these terms of the contract lend probability to the claim that such collateral agreement was made. We think it was competent, therefore, for the defendants to show by parol, if such be the fact, that a contract or agreement of agency existed, and that by the terms of such agreement the goods might in certain contingencies be returned."

Murdy v. Skyles, 101 Iowa 549, was an action upon a note. The note had been given for a doctor's bill. The suit was commenced by attachment, and the attachment was served by garnishment of a fund on deposit. This fund comprised the proceeds of an insurance policy. The defendant pleaded the statutory exemption of the fund thus attached. The plaintiff met this plea with parol evidence to the effect that at the time of rendering the medical service the defendant agreed that it should be paid for out of the insurance funds. The defendant objected to the parol evidence on the ground that it was in violation of the writing. There was no writing except the promissory note. We held that the parol evidence rule had no application to the case.

In Harvey v. Henry, 108 Iowa 168, the plaintiff was in the implement business. He became an agent for the sale of the threshing outfits manufactured by Nichols & Shepard Company. As such, he sold to Henry a complete Nichols & Shepard outfit, by written contract and for a stated consideration. This contract was entered into between the Nichols & Shepard Company, of the one part, and the defendant Henry, of the other. Contemporaneously Harvey bought and received from Henry the old threshing machine of the latter for a consideration of $300 and the surrender to Henry of two certain notes held by Harvey against Henry. These notes arose out of a prior transaction. As indicated, the contract of defendant Henry with the Nichols & Shepard Company was in writing and complete. His contract with Harvey in the sale of the old threshing machine was oral. These two contracts undoubtedly afforded mutual induce-

ments. But they were purely collateral. Either one could be enforced without any effect upon the other. Each rested upon its own consideration. Harvey himself was not 'a party to the written contract. Nor was Nichols & Shepard Company party to the oral contract. Defendant Henry was party to both. We held the oral contract to be purely collateral, and provable as such by parol evidence.

We have reserved reference to two cases most emphasized by the plaintiff as being conclusive in her favor. These are Ball v. James, 176 Iowa 647, and Mason v. Cater, 192 Iowa 143. Each of these cases was a suit upon a promissory note as classified under above No. 2. The parol evidence was directed to the consideration. The field of parol evidence in this class of cases is broader than in any other. The field, however, is limited to unilateral contracts, as before indicated. Such a contract is signed by only one of the parties. The writing is usually confined to a mere promise to pay, and is silent as to the consideration for which the instrument was given. In Ball v. James, parol evidence was admitted to prove that a promise by the payee to make a bequest to the payor was a part of the consideration. In the case at bar, the written contract was not unilateral. Its consideration was specified therein. The rule that controlled the case of Ball v. James can, therefore, have no application to the case at bar. Moreover, the Ball case was a border-line case, and a rather extreme one. It may well be deemed to have reached the outer limits of its field.

Mason v. Cater, 192 Iowa 143, was a suit upon two promissory notes signed by the defendant and payable to the plaintiff. The defendant pleaded the consideration of the note. He pleaded also that the delivery of the note was conditional only, and for a specific purpose. The plaintiff objected to parol evidence in support of the averments of the answer, on the ground that they contradicted the writing. There was no writing in existence except the notes. It was clearly permissible, therefore, for the defendant to show by parol the consideration therefor. It was also permissible to show by the same kind of evidence that its delivery was conditional only, and for a special purpose. It appeared from the parol evidence that the parties had exchanged farms. Both farms were mortgaged. They varied in value. It was agreed between them that the defendant would put upon the market the farm received by him; that he would convey to a purchaser acceptable to the plaintiff, which purchaser should assume the payment of these notes; that pursuant to such

arrangement the plaintiff brought a purchaser to the defendant, and the defendant conveyed to such purchaser, and such purchaser did assume such notes,—all with the consent and approval of the plaintiff.

We see nothing in this case to warrant the emphasis put upon it by the plaintiff. Other cases are cited. We have carefully considered them all. None of them are more favorable to the plaintiff than those which we have above reviewed. We proceed, therefore, to a brief consideration of those of our precedents which are hostile to the claims of the plaintiff.

III. We turn first to some of our later cases.

Burrier v. Sheriff, 207 Iowa 692, was a case where the plaintiff sought to introduce parol evidence of consideration of a contract, and the evidence was rejected on the ground that the consideration was specified in the written contract itself. The syllabus in that case consists of a single paragraph, as follows:

"The clearly expressed consideration recited in an unambiguous written instrument cannot be contradicted by parol evidence."

It is of interest to note in this case that the written contract was unilateral, and signed by the plaintiff alone. But it specified the consideration. It was for this latter reason that the parol evidence was held inadmissible.

Cady v. Lyman, 198 Iowa 661, was a case where the plaintiff sued the defendant for an alleged breach of an oral contract. It appears from the plaintiff's pleading that he had purchased by written contract of sale a farm from the defendant for an agreed price of $24,000. Such were the terms expressed in the written contract between them. The plaintiff averred that the parties at the same time entered into a collateral oral agreement whereby the vendor-defendant agreed to deliver to the plaintiff 500 good posts; that the consideration for said agreement was that it operated as an inducement to the plaintiff to buy the farm. The allegation of plaintiff's petition in that regard was as follows:

"As an inducement to plaintiff to purchase said farm and enter into said written agreement to do so, the defendant orally agreed with the plaintiff that he would sell and deliver to plaintiff five hundred good, merchantable posts of the best quality for use by plaintiff in repairing the fences on said farm, and plaintiff was induced to

buy said farm and enter into said agreement because of said under-taking and promise of defendant to deliver to him said posts at or prior to March 1, 1919, and but for such promise and sale, plaintiff would not have entered into said contract Exhibit A neither would he have agreed to pay the consideration therein named, and the agree-ment of the defendant to sell, convey, and deliver said posts to plain-tiff, as stated aforesaid, was a part of the consideration which in-duced the plaintiff to execute said Exhibit A and to undertake the payments therein provided."

The syllabus in that case consists of one paragraph, as follows:

"One who has explicitly contracted in writing to give a specified consideration for a named article or thing is not subject to an action on an alleged contemporaneous oral contract which, if maintainable, would compel him to enlarge or increase the consideration which he had agreed in writing to give."

Our discussion in that case is directly applicable to the record herein. We quote therefrom:

"The claim for plaintiff is that the contract here pleaded was collateral to the written contract, and was no part thereof, and that evidence thereof was permissible on that ground. It will be noted from the petition above quoted that such contract was not *collateral*. By a collateral contract is meant one that is complete in itself, and carrying its own consideration. It must also be consistent with the writing and not contradictory thereto. Such an oral contract may be enforced pursuant to its own terms, and this notwithstanding that its subject-matter may be related to the subject-matter of the written contract. Nor is it objectionable that the one contract should operate as an inducement to the other. But the oral contract set forth in the petition is not a contract of such class. It was either a mere promise by the vendor to make a gift, or else it was a promise by the vendor to enlarge the subject-matter and to bind himself to a greater obli-gation than that specified in the written contract. The petition charges specifically that the consideration for the oral agreement was the agreement of the plaintiff to pay $24,000 for the farm. The attitude of plaintiff is that, in consideration of the $24,000, which he agreed to pay, not only was he to receive the farm, but the 'defendant would *sell* and deliver' to plaintiff 500 good merchantable posts of the best quality. This latter allegation is somewhat ambiguous. If the

defendant was to *sell* to plaintiff 500 posts, the law would imply a promise by plaintiff to pay the reasonable value thereof. This would leave nothing in dispute between the parties. But the construction which the plaintiff puts upon his own pleading is that the defendant agreed to furnish additional consideration of 500 posts; whereas, the contract provided that the plaintiff should pay $24,000 for the farm. The plaintiff alleges the value of the posts bargained for to be $175, and this is the amount which he claims to recover. The posts, as the subject-matter of the controversy, were not in existence at the time of the contract, and were not owned by the defendant. The plaintiff simply went into the market and bought them, and charges the defendant with the value thereof. Manifestly if, without any consideration moving from him, the plaintiff can add $175 to the consideration moving from the defendant vendor, he could with equal propriety have added any other sum. The effect of the alleged oral agreement is to make the defendant assume a greater burden of obligation for the consideration of $24,000 than he agreed to assume in the written contract. The oral agreement has no other consideration than that undertaken by plaintiff in his written contract. He ingrafts his oral agreement upon the written contract, and demands thereunder more than the written contract would warrant."

Parriott v. Levis, 196 Iowa 875, was an action to recover rent under a written lease. The defense interposed was the breach of an oral contemporaneous contract whereby the defendant had the option to take "another apartment, when available, in lieu of the one leased." We held that the alleged collateral contract was not provable by parol evidence. The discussion of the opinion is to the same effect as that obtaining in the foregoing cases. This will be indicated by the following paragraph of the syllabus:

"A written lease for a *definite* term and rental may not be modified by a contemporaneous oral agreement to the effect that, whenever a larger apartment in the same building should be for rent, the lessee should have the option to terminate the written lease and, of course, cease payments thereunder."

Banwart v. Shullenburg, 190 Iowa 418, was an action brought by a tenant for damages for breach of an oral agreement, contemporaneous with the lease, to make improvements upon the premises. The syllabus of the opinion contains a single paragraph, as follows:

"A *written* lease at a specified rental may not be *orally* modified to show that the landlord agreed to do certain other things, in addition to turning over the premises to the tenant: i. e., that he orally agreed to make certain improvements on the leased premises. This illustration holds good even though written lease provides 'that the tenant shall haul all material used in improvements on the premises.' "

Miller v. Morine, 167 Iowa 287, was an action to recover an installment of rent. The defendant pleaded an alleged oral contract contemporaneous with the lease, and that the plaintiff had breached the same. He prayed damages for the breach. The first paragraph of Division 1 of the opinion is as follows:

"The one question in the case, however, is, Was it competent for the defendant to prove the alleged oral agreement or promise of the plaintiff and thus engraft it upon the written lease?"

The first paragraph of the syllabus of the case was as follows:

"Parol evidence is not admissible to vary the terms of a written instrument. Thus, where a written lease was free from ambiguity, and recited that, in consideration of the rental to be paid, the lessor was to perform certain covenants, evidence of a parol agreement that the lessor, for the same consideration, was to perform a different covenant not expressed in the writing, was not admissible."

The question presented in the case at bar was fully discussed in that case. We quote the following therefrom:

"It is urged by the defendant that there was no pleading in the cited cases to the effect that the contract was partly oral and partly in writing, whereas the defendant in the. case at bar has expressly pleaded that the contract of lease was partly oral and partly in writing. But it is no more competent for a party to plead a contract as partly oral and partly in writing than it is to prove it by parol, when the oral part is inconsistent with the written, or engrafts new undertakings or covenants thereto. This proposition was emphasized in the Kelley case, supra, and. also in Kelsey v. Casualty Co., 131 Iowa 207. If the door could be opened to parol evidence, to vary a written contract, by simply pleading that the contract was partly in writing and partly oral, it would be a door that could never be closed. The practical effect of such a rule would be to wholly destroy

reliance upon written contracts. All would become open to modification by the revival and substitution of antecedent negotiations. Appellee cites for our consideration a number of our cases wherein we have held parol evidence to be admissible in the presence of written instruments. They all deal with exceptions to the general rule. Generally speaking, such exceptions arise as a circumvention to fraud in some form, either as to the execution or as to the delivery of the instrument, or where the written contract is incomplete upon its face or ambiguous in its terms, or the oral agreement is independent and collateral and rests upon its own mutual considerations. None of such exceptions are involved in the case at bar. No fraud is pleaded, and no approach to fraud is shown in the evidence."

To the same effect are Canfield Lbr. Co. v. Kint Lbr. Co., 148 Iowa 207; Taylor v. Galland, 3 G. Greene 17; Edwards v. Wagner, 191 Iowa 822; Kelly v. C., M. & St. P. R. Co., 93 Iowa 436; Jessup v. C. & N. W. R. Co., 99 Iowa 189.

The definite purport of all these cases is that a consideration specified in a written contract is not available a second time as a consideration for a purported collateral contract in parol. Such was the holding of the trial court herein. Nor can a written contract which is complete in its terms be regarded as a consideration for a contemporaneous and purely collateral oral contract on the theory that one is an inducement for the other. Every part of a written contract is a part of the consideration to one party or to the other. The very purpose of the contract is to balance the consideration to one against the consideration to the other. When it is said that a contemporaneous oral contract is purely collateral to a contemporaneous written one, it means that the oral contract is not a part of the written one. To say that the consideration of the written contract may become the consideration of the contemporaneous oral contract, or that the written contract as a whole becomes a written consideration for the oral contract, is to reduce both contracts into one, and to permit the terms of the written contract to be qualified by those of the oral. The effect of such holding would be to destroy wholly the supremacy of the written contract over the parol qualification. The holding of the trial court was in accord with our prior holdings, as herein indicated.

IV. On the day prior to the submission of the case, the ap-

594

pellant filed an amended abstract. Such filing was not permissible. The case is pending before us on rehearing. Under the statute and the Rule, there can be no change of the record on rehearing. See Annotations to the Code, Vol. 1, page 2105 (Section 12845) ; Martin v. Martin, 125 Iowa 73.

The point is not material so far as this particular case is concerned. We take note of it only lest it become a pitfall to some future litigant if we ignore the breach. The appellant had no need of the amendment. The stimulus to it was evidently a challenge in appellee's brief to the effect that the record failed to disclose the value either of the estate of John Simplot or of the estate of Ida Simplot. The point thus raised by appellee is without merit. If the case had been triable *de novo* in equity, a different question might be presented. But in a law case on appeal, only specific errors are considered. The appellant is required to exclude from his abstract on appeal all matters of record which are not necessary for our consideration of specific errors. The fact that the abstract omitted to state the amount in controversy was consistent with the rule in law appeals. If we had found error, we should ordinarily only reverse and remand for new trial.

The judgment below is—Affirmed.

KINDIG, C. J., and ALBERT, MITCHELL, UTTERBACK, DONEGAN, and ANDERSON, JJ., concur.

KINTZINGER, J., took no part.