LYON COUNTY NATIONAL BANK, Appellant, v. CARSTEN WINTER ESTATE, Appellee.

No. 41108.

MAY 13, 1932.

Fisher & Riter, for appellant.

Warren H. White, for appellee.

DE GRAFF, J.—Carsten Winter died testate in the state of New York on or about the 3d day of August 1928. His will was admitted to probate in the surrogate court of New York County,

state of New York. On the 12th day of June 1929 an order was entered admitting the will of Carsten Winter, as a foreign will, to probate in the District Court of Iowa in and for Lyon County, and Warren H. White was appointed as administrator with will annexed in said estate. He qualified on the 17th day of June 1929 and letters of administration were issued to him on the aforesaid date. Notice of his appointment was served by publication as provided by law.

On the 19th day of July 1929 the Lyon County National Bank of Rock Rapids, Iowa, filed in the office of the Clerk of the District Court of Lyon County, Iowa, in due form, its verified claim based on a promissory note for $5500 dated May 25, 1925, with subsequent renewals thereof with interest at 8%. This note was signed ''Carsten Winter, by Henry Winter.''

On August 25, 1930, the claimant filed an amendment to its claim in which the amount of the claim ($5,500) was reduced to $4,836.22 with interest, and further alleged that the decedent, Carsten Winter, made and executed a power of attorney to Henry Winter, and that this claimant upon information and belief states that the decedent Carsten Winter had ratified the note upon which said claim is based, and that by reason of the assurance given by the administrator to the claimant bank that the debt was just, due and unpaid and would be taken care of in due time by the attorney in fact (Henry Winter), the claimant herein withheld service of the notice for the establishment of said claim, and that the claimant is entitled to equitable relief against the bar of the statute, as provided in Section 11972 Code 1927. Due notice and acceptance of service thereof of said amendment by the administrator was had on the 25th day of August 1930.

On November 12, 1930, the administrator filed his answer to the claim of the said Bank in which the administrator denied that the estate of Carsten Winter is indebted to said claimant bank as set out in its claim; denied that said decedent Carsten Winter executed and delivered the promissory note which is the basis of said claim, and that the said note was ever executed and delivered to said claimant by anyone authorized by said decedent so to do; denied that said decedent ever ratified the execution and delivery of said note to said claimant or to any-

one else. The administrator prayed that an order be entered rejecting said claim.

On November 14, 1930, the claimant bank filed its second amendment to its claim in which amendment it alleges that the said Henry Winter, named in the first amendment, was not only the attorney in fact of said Carsten Winter, deceased, but that he (Henry Winter) was the authorized agent of said Carsten Winter, and that the said Carsten Winter, after he had been informed of all the material facts and circumstances surrounding the execution and delivery of the original note in the sum of $5500, executed and delivered by the said "Carsten Winter by Henry Winter," as his attorney in fact and agent, did on or about February 1926 and February 1927 ratify and confirm the action of said attorney in fact in the execution and delivery of said note and the renewal thereof from time to time, including the renewal upon which this claim is based.

Further amending said second amendment to said claim, the claimant alleges that Carsten Winter did ratify the act and acts of said agent Henry Winter in signing said note and in allowing the possession and title of said property to be delivered to the said H. B. Winter and the taking of said chattel mortgage on the personal property of H. B. Winter as security in favor of said Carsten Winter on or about the month of February, 1926, and at said time and place in addition to said ratification, also duly authorized, empowered and directed said agent Henry Winter to continue said indebtedness from time to time as and when required and desired by said claimant, and that all subsequent renewals of said note of May 25, 1925, were made upon the express authority and power given to said Henry Winter, as aforesaid.

On November 14, 1930, the administrator filed his second amendment to his answer to the filed claim of the bank in which it is alleged that the promise of said Carsten Winter, if one was made, was merely an oral promise to answer for the debt, default or miscarriage of another; that said promise, if made, was not in writing; and that any evidence of such oral promise is incompetent for the reason that it is not in writing and not signed by said Carsten Winter, or by his authorized agent.

On the 29th day of November 1930 the administrator filed objections to the second amendment to plaintiff's claim and also

his motion to strike said second amendment, and for reasons therefor, after reviewing in chronological sequence the prior history of the cause, states that the said amendment does not in any way set up any additional facts as the basis of said claim, or in any way inform the administrator that said claimant intended to prove any facts not already alleged and set out in its original and first amended claim; that this was the condition of the record up until a hearing was had on said claim and until all parties interested had rested and this matter had been fully submitted to the court, and not until after the court had adjourned for the term did the claimant bank herein file its second amendment to said claim, nor did this administrator receive a copy of said second amendment until the day following the adjournment of said court, to wit, on November 15, 1930, at 5 o'clock P.M., when the attorney for said claimant handed this administrator a copy of said second amendment; that under Code Section 11963, ''if a claim filed against the estate is not fully admitted by the executor or administrator, the court may hear and allow the same, or may submit it to a jury, and on the hearing, unless otherwise provided, all provisions of law applicable to an ordinary action shall apply;'' that this claim was tried to the court by the administrator upon the issues as they stood at the time, that is, upon a promissory note held by said claimant and executed by Henry Winter, purporting to be the agent of the decedent, which was denied by the administrator; that the issue, therefore, was whether or not said claimant was the owner and holder of the promissory note of the decedent, and whether or not said note still remained unpaid; that, had the issue been as claimant now desired to make it by his second amendment, the administrator could have, and would have, prepared and tried said claim in an altogether different manner, and would have introduced evidence to refute some of the evidence introduced by said claimant; that it is error to try an action by ordinary proceeding and permit evidence to be introduced which is not material or germane to the issue, and after the case has been tried upon the issues as drawn at the time.

The ruling of the court at the close of all the evidence sustaining the motion to strike the second amendment under the appellee's motion is the provocation for the instant appeal by the claimant bank.

The record discloses, by the witness M. C. Cox, President of the Lyon County National Bank, that "the indebtedness originally arose when H. B. Winter, son of Carsten Winter, went through bankruptcy in May 1925. The bank had a chattel mortgage on all of his personal property. The father-in-law and both of them represented—Henry B. Winter, and the father-in-law represented that Carsten Winter was in Europe and that they hád full power of attorney to act and we (the bank) took the note on that basis, after examination by our attorney, that they had sufficient authority to make that agreement. When H. B. Winter went through bankruptcy the property covered by the chattel mortgage to the bank, which property belonged to H. B. Winter, was turned over to the bank,—that is, set apart to the bank in the bankruptcy proceeding." The chattel mortgage in question was signed by H. B. Winter and Mrs. H. B. Winter, his wife, as mortgagor, and it is recited that H. B. Winter was indebted to the Lyon County National Bank, as mortgagee, in the sum of $10,000, and then followed the description of the personal property together with all increase thereof, addition thereto or substitution, now situated on a certain described farm in the county of Lyon, state of Iowa. The mortgage then specifically described certain personal property located on said described farm. Henry Winter, as a witness upon the probate trial, under objections by the administrator based on the dead man's statute (Section 11257) was permitted to answer, with ruling reserved by the court, the following questions:

"Q. When did you first borrow $5500 from the Lyon County National Bank, signing Carsten Winter by Henry Winter, of which indebtedness this note is a renewal? A. The 21st day of May 1925. Q. What was the consideration of your note, Mr. Winter, for the note that you executed on May 21, 1925? A. That was when my son-in-law (H. B. Winter) went through bankruptcy and so then I went to work and borrowed this $5500 to keep him going on the farm there to keep his property. Q. After making the deal in 1925 did you write to Carsten Winter in Germany telling him about it? A. No."

The ruling and decree in this case were entered of record December 29, 1930, and during the trial the court reserved its ruling on all questions to which proper legal objections were

made, until the decree was entered, as heretofore stated, when the motion to strike the second amendment to plaintiff's cause of action was sustained.

It further appears from the record that Carsten Winter made and executed a power of attorney on May 1, 1922, to Henry Winter, the father-in-law of H. B. Winter, and also to H. B. Winter, the son of Carsten Winter. As pointed out, Henry B. Winter was adjudicated a bankrupt in the Federal Court in May 1925. One of his creditors was the Lyon County National Bank of Rock Rapids. The bank held a mortgage on nearly all of the personal property of H. B. Winter to secure his indebtedness owing by him to the bank. In the court of the bankruptcy proceedings the property under chattel mortgage of H. B. Winter (dated more than four months prior to adjudication of the mortgagor) was set aside by the referee in bankruptcy to the claimant bank herein, which bank was the mortgagee in the chattel mortgage. Thereafter, and on or about the 21st day of May, 1925, the bank turned over the mortgaged property and either sold or turned the same back to H. B. Winter. In payment therefor the bank took the note in question in the amount of $5500 signed "Carsten Winter by Henry Winter." The conclusion cannot be escaped that this indebtedness was in reality the indebtedness of H. B. Winter, and not of Carsten Winter.

The record also discloses that H. B. Winter paid the interest on the note from time to time, and when H. B. Winter sold everything he had left, including after-acquired property and property remaining from the mortgage, the proceeds were turned over to the bank to be applied on the note in question. The debt evidenced by the note was considered and understood to be the debt of H. B. Winter, and not of Carsten Winter, and was so understood and treated by the Lyon County National Bank and also by Henry Winter. A careful reading of the power of attorney to Henry and H. B. Winter discloses that it did not in any way give authority to the said Henry Winter to bind Carsten Winter or his estate by the execution of the note in suit. It certainly may be said that this power of attorney did not empower Henry to borrow money and execute the note as evidence of Carsten Winter's obligation and pay the same for the purpose of staking the bankrupt H. B. Winter, and it is too plain for argument that H. B. Winter, under his power of attorney, had no authority to

bind the estate of Carsten Winter to pay the indebtedness owing by H. B. Winter to the claimant bank. It may be said in this connection that Henry Winter endorsed the renewal note in question, and thereby he created a contingent, if not a direct, liability on said note.

The claimant-appellant relies on the primary proposition for a reversal, that the court erred because the said Carsten Winter, now deceased, ratified each and all the transactions of his agent Henry Winter in the execution and delivery of the note in suit, and all renewal notes. There can be no quarrel with the principles of law stated by the appellant governing the law of ratification. When an unauthorized agreement of an agent has been ratified by his principal, an action lies thereon, as though originally made by due authority. Long v. Osborn, 91 Iowa 160. Such ratification is equivalent to prior authority and need not be specially pleaded. Smith v. Des Moines Nat. Bank, 107 Iowa 620; McColl v. Jordan, 200 Iowa 961; Dodd v. Groos, 175 Iowa 47; Hosteter v. Wear-U-Well Shoe Co., 171 Iowa 346; Securities Sav. Bank v. Hambright, 195 Iowa 1147; Horrabin & Co. v. McCallum, 191 Iowa 441; Miller v. Chatsworth Sav. Bank, 203 Iowa 411.

Viewing the above legal principles as the settled law on this subject, it is pertinent to inquire what was the source of the testimony bearing on the proposition of ratification. Was there competent evidence from competent witnesses introduced by the claimant to establish ratification of the act of Henry Winter? All of the testimony of Henry Winter and H. B. Winter regarding transactions or conversation had with Carsten Winter must be held inadmissible, for the reasons (1) that it had to do with transactions or conversations had with a party since deceased, (2) by parties who are interested in the outcome of the litigation, which litigation was against the administrator of the estate of the decedent, Carsten Winter. The "dead man's statute" (Section 11257 Code 1927) was invoked as against the testimony of these witnesses, each of whom was interested in the outcome of this case, as heretofore pointed out, and the action was against the administrator.

"The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the

judgment, or that the record will be legal evidence for or against him in some other action." Wormley v. Hamburg, 40 Iowa 22.

In the case of Shuman v. Supreme Lodge K. of H., 110 Iowa 480, this court said:

"Three elements must exist in order to exclude this testimony under the section mentioned: (1) The matter must be in the nature of a personal transaction or communication; (2) the witness must be a party to the suit, or interested in the event thereof; (3) the action must be against the executor, administrator, assignee, etc."

See, also, German American Sav. Bank v. Hanna, 124 Iowa 374; Reard v. Freiden, 184 Iowa 823; In re Martin's Will, 166 Iowa 233; Linnemann v. Kirchner, 189 Iowa 336. In the Linnemann case, supra, the object of the dead man's statute is well stated:

"That statute seeks to protect those who have become unable to utter a denial of testimony that seeks to seize estates they have left behind. The reason of the statute rests on the fear that, without it, there will be a tendency to have testimony against one dead, swayed by self-interest. Both the letter and spirit of the statute, therefore, exclude this testimony that the alleged contract was entered into. The same excludes testimony to the effect of what acts were done in reliance upon the alleged contract."

As suggested by counsel for appellee, the only matter in question is whether or not the witnesses were parties to this suit or interested in the event thereof. Clearly both H. B. Winter and Henry Winter were interested "in the event thereof" and consequently their testimony as to what Carsten Winter said to them on the occasions of his two visits to his home in Rock Rapids in February of 1926 and 1927, after his sojourn in Germany, was inadmissible under Section 11257 Code 1927, as urged in the objections by the appellee on the trial in probate of this cause.

It results, therefore, that the power of attorney given by Carsten Winter, now deceased, to Henry Winter was not sufficiently broad to authorize his signing the note in suit, and fur-

ther that the testimony of both witnesses on the question of ratification was inadmissible. It follows, therefore, there is not sufficient evidence to sustain the claim of the appellant bank.

The judgment entered is—Affirmed.

WAGNER, C. J., and FAVILLE, STEVENS, and ALBERT, JJ., concur.